# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rong Zhang, et al., | No. CV-21-01079-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Voice of Guo Media Incorporated, et al., | |
| Defendants. | |

Pending before the Court are ROL Entities'[1] Motion to Dismiss ("MTD"), (Doc. 36), and Media Entities'[2] Partial Motion to Dismiss ("PMTD"), (Doc. 38), which the Court will consider simultaneously. The motions are fully briefed. (*See* Docs. 39; 40; 42; 43.) After considering the briefing and relevant caselaw, the Court will grant ROL Entities' MTD, (Doc. 36), and grant in part and deny in part Media Entities' PMDT, (Doc. 38.), for reasons explained below.

## I. BACKGROUND

This case turns on whether the Defendants[3] perpetrated a fraudulent sale of

---

[1] ROL Entities means Defendants Rule of Law Foundation III, Inc. and Rule of Law Society IV, Inc.

[2] Media Entities means Defendants Wengui Guo and GTV Media Group, Inc. ("GTV"), as well as Defendant Saraca Media Group, Inc. ("Saraca").

[3] Defendants include ROL Entities and Media Entities, as well as Defendants Voice of Guo Media, Inc. ("VOG") and Sara Wei. Although the latter two have been served, (Doc. 33; Doc. 31), they did not join in the instant motions to dismiss, (*see* Docs. 36, 38), and the Court has filed an entry of default against them, (Doc. 50), for their failure to respond to Plaintiff's First Amended Complaint ("FAC"), (Doc. 30).

securities against the Plaintiffs Rong Zhang, Xiaodan Wang, and Chong Shen Raphanella (collectively, "Plaintiffs"), who are allegedly investors in a new media platform proffered by the Defendants. (Doc. 30 ¶ 2.)

Defendant Wengui Guo is a Chinese billionaire with a multi-media empire; he currently resides in New York. (*Id.* ¶¶ 35–36.) Plaintiffs believe "Guo owns, directs, and/or otherwise controls Saraca, GTV, VOG, and the ROL Entities." (*Id.* ¶ 30.)[4] Defendants Saraca and GTV are Delaware corporations—allegedly founded by Guo—located at the same New York address. (*Id.* ¶ 19.) GTV is a media company established as "the only uncensored and independent bridge between China and the Western world." (*Id.* ¶ 39.) Plaintiffs believe Saraca, at Guo's direction, incorporated GTV as a "wholly-owned subsidiary." (*Id.* ¶ 38.) According to Plaintiffs, "Saraca owns at least 90% of the equity of GTV." (*Id.* ¶ 20.) The ROL Entities are Delaware not-for-profit corporations founded and wholly owned and controlled by Guo. (*Id.* ¶¶ 26–27.) The ROL Entities together share the same New York mailing address and physical office. (Doc. 36 at 3.) Guo used his prominence and multi-media platforms to allegedly solicit investment in GTV. (Doc. 30 ¶ 40.)

Plaintiffs allege that "[a]t all relevant times, each of the Defendants was the agent, servant, employee, partner, or alter ego of the other Defendants, and the acts of each Defendant were in the scope of such relationship." (*Id.* ¶ 33.) Plaintiffs further allege that Guo "exercised control and dominion over the other Defendants" such that each Defendants' conduct was at Guo's behest. (*Id.* ¶ 34.)

Plaintiffs allege that an individual could invest in GTV in one of two ways: (1) directly with a minimum investment of $100,000; or (2) indirectly through VOG. (*Id.* ¶ 47.) Both modes of investment necessitated a prior donation either directly to Guo or to the ancillary ROL Entities. (*Id.* ¶ 48.) After fulfilling the prior donation requirement,

---

[4] Sara Wei is the President, Director, and Manager of VOG. (Doc. ¶ 20.) VOG is an Arizona corporation located in Scottsdale, Arizona. (*Id.* ¶ 15.) "VOG was a vehicle through which smaller investors could purportedly partake in the GTV investment." (*Id.* ¶ 32.)

potential investors completed a "Limited Purpose Agency Agreement" required by VOG. (*Id.* ¶ 57.) This agreement designated Wei as the investors' agent to purchase GTV securities. (*Id.* ¶ 58.) Following completion, "Wei directed investors to wire the purchase amount to bank accounts controlled by Wei and/or VOG." (*Id.* ¶ 59.) However, according to the Plaintiffs, "[n]o investor who purchased GTV common stock through VOG ever received GTV shares." (*Id.* ¶ 61.)

Plaintiffs, on behalf of themselves and all other similarly situated, filed their Class Action FAC against the Defendants. (*Id.* at 2.) Plaintiffs' action seeks recovery of damages caused by Defendants' alleged violation of A.R.S. § 44-1991 and A.R.S. § 44-1998, common law fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, negligent misrepresentation, and unjust enrichment. (*Id.* at 30–42.)

## II. DEFENDANT GUO'S BANKRUPTCY

While the instant motions were pending, a Notice of Bankruptcy was filed alerting the Court that Defendant Guo submitted a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (Doc. 45.) That filing operates as a stay of the continuation of any judicial action against Defendant Guo. 11 U.S.C. § 362(a)(1). Therefore, the ruling on Media Entities' PMTD will be directed to, and considered only as it applies to, Defendants GTV and Saraca.

## III. LEGAL STANDARDS

### A. Rule 12(b)(2)

Under Rule 12(b)(2), a defendant may move to dismiss the complaint for lack of personal jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); Fed. R. Civ. P. 12(b)(2). Plaintiffs bears the burden of establishing personal jurisdiction, *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995), and "need only make a prima facie showing of jurisdictional facts" "in the absence of an evidentiary hearing," *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (citation omitted). In determining whether a plaintiff has established a prima facie case for personal jurisdiction over a defendant, the complaint's uncontroverted allegations are accepted as true and

1 "conflicts between the facts contained in the parties' affidavits must be resolved in
2 [plaintiff's] favor." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586,
3 588 (9th Cir. 1996). Moreover, "the court may consider evidence outside the pleadings,
4 including affidavits and other materials submitted on the motion." *SKAPA Holdings LLC*
5 *v. Seitz*, No. CV-20-00611-PHX-DJH, 2021 WL 672091, at *2 (D. Ariz. Jan. 21, 2021),
6 *aff'd*, No. 21-15298, 2022 WL 94716 (9th Cir. Jan. 10, 2022) (quoting *Lindora, LLC v.*
7 *Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1135 (S.D. Cal. 2016)).

8 "When no federal statute governs personal jurisdiction, the district court applies the
9 law of the forum state." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d
10 597, 602 (9th Cir. 2018). Arizona exerts personal jurisdiction to the "maximum extent
11 permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ.
12 P. 4.2(a); *see*, *e.g.*, *A. Uberti and C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995). Thus,
13 analyzing personal jurisdiction under Arizona law and federal due process are identical.
14 *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

15 To comport with due process, "[a]lthough a nonresident's physical presence within
16 the territorial jurisdiction of the court is not required, the nonresident generally must have
17 certain minimum contacts . . . such that the maintenance of the suit does not offend
18 traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283
19 (2014) (internal quotation marks and citations omitted). This requirement ensures "that a
20 defendant be haled into court in a forum State based on his own affiliation with the State,
21 not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with
22 other persons affiliated with the State." *Id.* at 286 (quoting *Burger King Corp. v.*
23 *Rudzewicz*, 471 U.S. 462, 475 (1985)). "Depending on the strength of those contacts, there
24 are two forms that personal jurisdiction may take: general and specific." *Picot v. Weston*,
25 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted); *Cybersell, Inc. v. Cybersell, Inc.*,
26 130 F.3d 414, 416 (9th Cir. 1997).

27 "When a plaintiff relies on specific jurisdiction, he must establish that jurisdiction
28 is proper for 'each claim asserted against a defendant.'" *Picot*, 780 F.3d at 1211 (quoting

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)). "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state.'" *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S.Ct. 1773, 1781 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Without such a connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 137 S.Ct. at 1781. "Only contacts occurring prior to the event causing the litigation . . . may be considered by the Court." *Ariz. Sch. Risk Retention Trust, Inc. v. NMTC, Inc.*, 169 F. Supp. 3d 931, 935 (D. Ariz. 2016) (citing *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990)).

In analyzing specific jurisdiction, courts use the three-prong minimum contacts test as a guide "to determine whether a defendant has sufficient contacts with the forum to warrant the court's exercise of jurisdiction[.]" *Freestream*, 905 F.3d at 603. The test requires that:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* (citation omitted); *see also Picot*, 780 F.3d at 1211. "The plaintiff has the burden of proving the first two prongs." *Picot*, 780 F.3d at 1211 (citation omitted). "If the plaintiff succeeds in satisfying [them], the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476–78). Absent a

- 5 -

1  "compelling case" that exercising jurisdiction would be unreasonable, it is presumed
2  reasonable. *Burger King*, 471 U.S. at 477. If a plaintiff fails to meet the first prong, the
3  Court need not address the others. *Ariz. Sch. Risk Retention Trust*, 169 F. Supp. 3d at 936.

**B. Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## IV. DISCUSSION

In its MTD, the ROL Entities move to dismiss the FAC on two grounds: (1) the Court lacks personal jurisdiction because it has insufficient minimum contacts with the State of Arizona; and (2) Plaintiffs failed to state a claim upon which relief can be granted. (Doc. 36 at 4–15). The Media Entities PMTD contends that Plaintiffs' have failed to state a claim on both their breach of fiduciary duty and negligent misrepresentation claims. (Doc. 38 at 1–2.) The Court will begin with the jurisdictional issues before addressing the alleged failure to state a claim.

### A. Personal Jurisdiction

Neither side in this case alleges or argues that the Court has general jurisdiction over ROL Entities, nor could they. The ROL Entities have no ties to Arizona and are organized under the laws of Delaware, with their home office in New York. Therefore, the analysis will be confined to the issue of specific jurisdiction.

Under the first prong of the specific jurisdiction test, Plaintiffs must show that Defendants "either (1) 'purposefully availed' [itself] of the privilege of conducting activities in the forum, or (2) 'purposefully directed' [its] activities toward the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (citing *Schwarzenegger*, 374 F.3d at 802). This prong presents two distinct standards, with each to be applied under different circumstances. *Schwarzenegger*, 374 F.3d at 802; *see Ziegler*, 64 F.3d at 473 (explaining that courts apply the first prong differently to contract cases versus tort cases). In this Circuit, "[a] purposeful direction analysis . . . is most often used in suits sounding in tort," *Schwarzenegger*, 374 F.3d at 802, as is the case here.

Purposeful direction is evaluated under the three-part "effects" test outlined in *Calder v. Jones*, 465 U. S. 783 (1984). *See id.* at 803. That test requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered at the forum state." *Id.* (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

- 7 -

Under the purposeful direction framework, Plaintiffs have not pled facts to support the Court's personal jurisdiction over the ROL Entities. There are no factual allegations that the ROL Entities took any action in or directed at Arizona. All that is alleged is that they accepted donations from Arizona. ROL Entities did not solicit the donations; Defendant Guo did.

To overcome this deficiency, Plaintiffs argue that this Court should apply the conspiracy theory of personal jurisdiction, which "is based on the premise that a conspirator's acts in furtherance of a conspiracy are attributable to the other members of the conspiracy." *In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1138 (D. Nev. 2009). "Consequently, some courts attribute a conspirator's in-forum acts to his co-conspirators for personal jurisdiction purposes." *Id.* Although the Ninth Circuit has not expressly accepted or rejected the theory, it "has noted that 'a great deal of doubt' surrounds the conspiracy theory's legitimacy." *Id.* (quoting *Chirila v. Conforte*, 47 F. App'x 838, 842 (9th Cir. 2002)). Indeed, many courts have concluded that this theory does not comport with the requirements of due process. *See id.* at 1138–89 n. 8 (collecting cases). This Court agrees and, therefore, declines to apply the theory here.

Plaintiffs also argue that this Court should exercise personal jurisdiction over ROL Entities because of the agency relationship between them and Defendant Guo. Under that theory, personal jurisdiction may be found over the principal based on the actions of the agent. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023–24 (9th Cir. 2017). However, the Ninth Circuit has expressed doubt on whether an agency relationship theory of specific personal jurisdiction survives after the Supreme Court's ruling in *Daimler AG v. Bauman*, 571 U.S. 117 (2014). *See id.* at 1023–25 ("[T]he *Daimler* Court's criticism of the [agency-personal-jurisdiction] standard found fault with the standard's own internal logic, and therefore applies with equal force regardless of whether the standard is used to establish general or specific jurisdiction."). Moreover, "a fundamental tenet of an agency relationship is that the principal had the right to substantially control its agent's activities." *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL

3709854, at *5 (D. Ariz. Aug. 20, 2021) (quoting *Williams*, 851 F.3d at 1025) (cleaned up).

Here, Plaintiffs attempt to apply this theory in reverse by asking this Court to exercise jurisdiction over the *agent* based on the actions of the *principal*—over which the agent has no control. While the FAC may allege facts to support Guo's control over the ROL Entities, the reverse is not true. Because agents do not exercise control over principals, Plaintiffs' agency theory of specific personal jurisdiction fails. *See Williams*, 851 F.3d at 1025 (holding that there was no specific personal jurisdiction over a parent corporation for actions taken by a subsidiary because there was no allegation that the parent corporation "had the right to control [the subsidiary's] activities in any manner at all.")

All of Plaintiffs' proffered theories on personal jurisdiction fail. Therefore, ROL Entities will be dismissed for lack of personal jurisdiction.

**B. Failure to State a Claim**

The Court will not analyze ROL Entities' arguments under Rule 12(b)(6) because this Court lacks jurisdiction over them. Therefore, this analysis will be focused on the claims against Media Entities'.

    i.   <u>Pleading Standard</u>

Media Entities have argued that in addition to Rule 8 pleading standards, Counts IV and VII must satisfy the higher pleading standard of Rule 9 because both claims sound in fraud. (Doc. 38 at 4–5.) Plaintiffs made no argument to the contrary, so the Court will apply the Rule 9 pleading standard.

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Furthermore, intent, knowledge, or other *mens rea* elements may be alleged generally. *Id.* Thus, "[w]hile the elements of knowledge and intent may be averred generally; the factual circumstances of the fraud itself require particularized allegations." *Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d 1131, 1158 (D. Haw. 2013) (citing *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010)). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well

- 9 -

as 'what is false or misleading about [the purported fraudulent] statement, and why it is false.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and citations omitted). "Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend," *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001), but it also "deter[s] the filing of complaints as a pretext for the discovery of unknown wrongs," *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). Therefore, to satisfy Rule 9(b), Plaintiffs must allege the time, place, and manner of each act of fraud and also specify each defendant's role in the fraud. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).

    ii.  Controlling Law

Media Entities assert that—although this suit is filed in the District of Arizona—New York also has a "significant relationship to this dispute." (Doc. 38. at 5 n.1.) They point specifically to the fact that Sarca, GTV, and the ROL Entities are headquartered in New York.[5] (*Id.*) As a result, Defendants advance arguments under both Arizona and New York law, without arguing which law controls Plaintiff's tort claims. (*See generally* Doc. 38.) Plaintiff responds with arguments under both Arizona and New York law, again failing to argue which is appropriate here. (*See generally* Doc. 40.)

"Arizona courts apply the principles of the Restatement (Second) of Conflicts when determining the controlling law of multistate torts." *Labertew v. Chartis Prop. Cas. Co.*, 363 F. Supp. 3d 1031, 1039 (D. Ariz. 2019). That Restatement provides that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflicts § 145(1). The Restatement explains that the "[c]ontacts to be taken into account in applying the principles of § 6" include the following: "(a) the place where the injury

---

[5] The also point to Guo's residence in New York, but the Court will not consider that fact in light of the stay on proceedings against Guo as a result of his bankruptcy filing.

- 10 -

occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." *Id.* at § 145(2). Importantly, "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* at § 145(3); *see also Magellan Real Est. Inv. Tr. v. Losch*, 109 F. Supp. 2d 1144, 1156 (D. Ariz. 2000).

Although the relationship between the parties was primarily online, the Court finds that it was centered in Arizona—which the Court finds to be highly important to the tort issues in this case. Plaintiffs are residents of California, Maryland, and Canada. (Doc. 30 ¶¶ 16–18.) Defendants are headquartered in New York and Arizona and are incorporated in Delaware, New York, and Arizona. (*Id.* at 8–9.) The relationship between Plaintiffs and Defendants arose through online interactions, and Plaintiffs' payments were also made via digital means—PayPal, Livestream, or though wire transfer. (*Id.* at 25–29.) But the most significant portions of those payments were made, via wire transfer, to VOG—which is an Arizona Corporation. (*Id.* at 7, 25–29.) Furthermore, confirmations of those transfers were emailed to Defendant Wei, who was domiciled in Arizona and was the director, manager, and president of VOG. (*Id.* at 20, 25–29.) Thus, while the location of the injury is not clear, it is clear that an Arizona corporation and one of its agents were a significant cause of the alleged injury. Moreover, to the extent the relationship involving this many parties in this many locations can be said to be "centered" anywhere, the Court finds that it was centered in Arizona. Therefore, the Court finds that Arizona has the most significant relationship to this suit and will apply Arizona law.

### iii. Breach of Fiduciary Duty

Media Entities argue that the claim for breach of fiduciary duty should be dismissed because they owe no fiduciary duty to Plaintiffs. (Doc. 38 at 5.) Plaintiffs argue that Defendants owe a fiduciary duty as promoters of the corporation. (Doc. 40 at 3.)

"[I]n an action asserting a claim for breach of fiduciary duty, 'like all tort actions, a plaintiff must allege and prove the existence of a duty owed, a breach of that duty, and

1 damages causally related to such breach.'" *Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1004 (D. Ariz. 2011) (quoting *Smethers v. Campion*, 210 Ariz. 167, 108 P.3d 946, 949 (Ariz. Ct. App. 2005)). "In Arizona the promoters of a corporation stand in a fiduciary relationship to the stockholder investors." *Johnson v. Nychyk*, 517 P.2d 1079, 1081 (Ariz. Ct. App. 1974); *see also Facciola v. Greenberg Traurig, LLP*, 781 F. Supp. 2d 913, 924 (D. Ariz. 2011), *aff'd*, 593 F. App'x 723 (9th Cir. 2015).

Here, Plaintiffs allege (1) that Saraca and GTV marketed the stock offerings to investors through videos on social media websites;[6] (2) that Saraca, along with Guo, created GTV and exercised control over VOG—the Arizona corporation through which plaintiffs paid money to buy GTV stock; and (3) that Saraca and GTV also solicited investors through many media platforms. (Doc. 40 at 4.) The Court finds Plaintiffs have alleged enough specific facts showing that a fiduciary duty existed to satisfy Rule 9's requirements. Moreover, whether Saraca and GTV were actually agents or promotors—or both—is generally a question of fact to be decided later. *See Facciola*, 781 F. Supp. 2d at 925 ("Whether and to what extent [the defendants] actually were agents [or] promoters and to what extent an imbalance of knowledge existed such that investors relied heavily on [the defendants] for advice are questions of fact.").

Media Entities also argue that the claim must be dismissed based on Plaintiffs' failure to adequately plead causation. (Doc. 38 at 9.) This argument holds no weight. It is clear from the FAC that Plaintiffs claim they were misinformed and enticed into investing in a non-existent stock offering, and—as a result—they lost their investment money. (Doc. 30 at 37–38.) Thus, Plaintiffs have adequately pleaded causation.

Therefore, the Court will not dismiss this claim.

### iv. Negligent Misrepresentation

Media Entities argue that the FAC fails to set forth any duty owed by Defendants to Plaintiffs. (Doc. 38 at 10.) In Arizona, the elements of negligent misrepresentation are as follows:

---

[6] The Court is ignoring the allegations referencing Guo because of the bankruptcy.

- 12 -

> (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage.

*KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 n.7 (Ariz. Ct. App. 2014). In commercial transactions, there is a duty of care owed by the information supplier to the foreseeable user. *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 813–14 (Ariz. 1987). To establish that one is a foreseeable user, a plaintiff must show "that the defendant provided the information for her benefit or knew that the information would be supplied to her." *Leist v. Acad. Mortg. Corp.*, No. CV-16-00314-PHX-DGC, 2016 WL 1593815, at *3 (D. Ariz. Apr. 20, 2016) (citing *St. Joseph's Hosp. & Med. Ctr.*, 742 P.2d at 813).

Here, it is undisputed that this was a commercial transaction, plaintiffs are foreseeable users, and Media Entities provided the information. (*See generally* Doc. 38.) Additionally, there is sufficient detail in the FAC to satisfy the Rule 9's pleading standards. The FAC outlines the many different locations through which each Defendant provided the information and during what time period. (Doc. 30 at 11–28.) Thus, this argument cannot serve as grounds for dismissal.

Media Entities also argue that "portions" of this claim should be dismissed because a promise of future conduct cannot support a claim of negligent misrepresentation. (Doc. 38 at 12–13 (citing *McAlister v. Citibank (Arizona), a Subsidiary of Citicorp*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992)). Specifically, they argue that their statements about how the securities would be obtained through VOG and how investor funds would be used cannot support a claim for negligent misrepresentation. (*Id.*) Surprisingly, Plaintiffs do not respond to this argument. (*See generally* Doc. 40.)

"Failure to respond to an argument set forth in a motion to dismiss constitutes waiver of the issue by the party opposing the motion and is an adequate basis for granting the

motion to dismiss." *Green v. Arizona Bd. of Regents*, No. CV-18-04665-PHX-SPL, 2020 WL 2512759, at *4 (D. Ariz. May 15, 2020) (collecting cases). The Court finds that Plaintiffs' failure to respond to Defendants' arguments—about promises of future conduct being inadequate to establish a negligent misrepresentation claim—to be a concession of the argument and, thereby, a ground to dismiss the claim. *See id.* However, the Court will only dismiss the "portions" of the claim that relate to this argument. (*See* Doc. 38 at 12–13.)

Therefore, the Court will dismiss the portions of Plaintiffs' negligent misrepresentation claim that rely on assertions about "how the securities would be obtained through VOG" and "how investor funds would be used." (*See* Doc. 30 at ¶ 190(d) & (e).) But the Court will deny Media Entities' PMTD in all other respects. Thus, Plaintiffs' claims that Defendants misrepresented "(a) the true value of GTV; (b) the true nature of the GTV investment; (c) the relative risk of the GTV securities," (id.), will survive this order.

## V. CONCLUSION

**IT IS ORDERED** granting ROL Entities' Motion to Dismiss, (Doc. 36), and denying in part and granting in part Media Entities' Motion to Dismiss, (Doc. 38), in accordance with this order.

Dated this 6th day of July, 2022.

Honorable Susan M. Brnovich
United States District Judge

- 14 -